# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Randy Gamble, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No.: 2:10-447-PMD |
| v. ) | |
| ) | **ORDER** |
| David J. English, Chris Thompson, and ) | |
| Coastal Chevrolet-Cadillac, Inc., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the court upon Plaintiff Randy Gamble's ("Plaintiff") motion to remand. For the reasons set forth herein, the court grants in part and denies in part Plaintiff's motion.

## BACKGROUND

This dispute arises out of Plaintiff's dealings with Coastal Chevrolet-Cadillac, Inc. in relation to a 2003 Mercury Mountaineer he owned. Plaintiff alleges that it was his understanding that the Mountaineer was covered by a bumper-to-bumper warranty; therefore, he would not have to pay for any repairs made to the vehicle if it were to experience problems during the warranty period. But when he took the vehicle in to be repaired, Coastal Chevrolet informed him that the bumper-to-bumper warranty did not cover the repairs and charged him for the work done. In light of the fact that the car was not covered under the warranty, Plaintiff and his wife, Deirdre Gamble, inquired with Defendant Chris Thompson, a salesman for Coastal Chevrolet, about trading in the Mountaineer for another vehicle. Thompson informed Plaintiff that he could not trade in the Mountaineer because he was "upside down" on the payments related to the value of the vehicle. According to Plaintiff, Thompson did suggest, however, as an alternative solution, a deal which

involved him selling Plaintiff's wife two vehicles, a 2006 Envoy and a 2004 KIA Spectra, while Coastal Chevrolet would make the payments on the Mountaineer until the dealership was able to sell it. In his complaint, Plaintiff claims to have been surprised by this deal because he and his wife had no money for a down payment and because Thompson knew that they could not afford to make payments on three vehicles. Plaintiff alleges that Thompson assured him that he and his wife would not have to make three car payments because the dealership would make payments on the Mountaineer until it was sold.

Based on Thompson's representations, Plaintiff and his wife decided to go through with the deal. Because they did not have any money for down payments for the Envoy or the KIA Spectra, Thompson allegedly convinced two other sales people at the dealership, Angie Gamble and Fred Ford, to loan Plaintiff's wife $2,200. Somehow Thompson used this money to obtain financing for Plaintiff's wife, and after the deal was completed, Plaintiff had financing through GMAC for the Mountaineer, and his wife had financing through Capital One for the Envoy and through Wells Fargo for the KIA Spectra. Thompson then had Plaintiff leave the Mountaineer on Coastal Chevrolet's lot so the dealership could sell it and allegedly represented to Plaintiff again that the dealership would make the payments on the Mountaineer until it was sold. As such, Plaintiff and his wife left the dealership expecting to only have to make two car payments.

Sometime later, Plaintiff began to receive debt collection calls from GMAC regarding the Mountaineer, so he contacted Coastal Chevrolet to determine the status of the vehicle. He was informed that the car had not been sold. Plaintiff then met with Thompson and Defendant David English, the owner and operator of Coastal Chevrolet, to discuss the debt collection phone calls from GMAC. During the meeting, English denied that Thompson ever would have entered into a deal on

behalf of Coastal Chevrolet that required it to make payments on the Mountaineer. Furthermore, English instructed Plaintiff to remove the Mountaineer from the dealership's lot. Plaintiff could not afford to make payments on the Mountaineer, and GMAC later repossessed the vehicle. GMAC then filed a suit against Plaintiff and obtained a judgment against him for the deficiency on the sale of the Mountaineer plus attorney's fees and costs, amounting to $11,326. Plaintiff, a citizen of South Carolina, filed suit against English, Thompson, and Coastal Chevrolet, also citizens of South Carolina, in state court, alleging causes of action for negligence, violation of the South Carolina Unfair Trade Practices Act, violation of the South Carolina Manufacturers, Distributors, and Dealers Act, and violation of the Truth in Lending Act. Because Plaintiff alleges a cause of action under the Truth in Lending Act, Defendants removed the matter to federal court, and Plaintiff now moves the court to remand the case.

## **ANALYSIS**

Plaintiff asks the court to remand his suit based on three arguments. First, Plaintiff contends that Defendants have waived any right of removal because they have already elected to proceed with a motion to dismiss in state court. The court disagrees, as Defendants filed their motion to dismiss in state court prior to Plaintiff amending his complaint to add the federal Truth in Lending Act claim. At the time Defendants filed their motion to dismiss in state court, there were no grounds by which they could have removed the suit to federal court; therefore, the court does not find that Defendants waived their right to removal. Next, Plaintiff contends that his claim pursuant to the Truth in Lending Act is not really a claim under federal law; rather, he argues that it is a claim pursuant to the South Carolina Consumer Protection Code, which states: "A person upon whom the Federal Truth in Lending Act imposes duties or obligations shall make or give to the consumer the

3

disclosures, information and notices required of him by that act and in all respects comply with that act." S. C. Code Ann. § 37-3-301. Plaintiff contends that because the South Carolina Consumer Protection Code adopted the duties and obligations of the federal Truth in Lending Act, he is really alleging a Truth in Lending state cause of action. The court declines to remand the case based on this argument. Because nothing in his amended complaint references the South Carolina Consumer Protection Code, the court interprets Plaintiff's claim as one pursuant to the federal Truth in Lending Act. Of course, Plaintiff may voluntarily dismiss his Truth in Lending claim and move to amend his complaint to allege a cause of action pursuant to the South Carolina Consumer Protection Code, but until that time, the court declines to make such a finding to remand this case.

Lastly, Plaintiff moves the court to remand his suit because state law claims predominate in this matter. To be sure, this case is a dispute between citizens of South Carolina, and out of his four causes of action, three arise out of state law: negligence, violation of the South Carolina Unfair Trade Practices Act, and violation of the South Carolina Manufacturers, Distributors, and Dealers Act. These claims were the entirety of Plaintiff's complaint, until he amended it to allege a Truth in Lending violation, which he now argues is really a claim pursuant to the South Carolina Consumer Protection Code. Nevertheless, Plaintiff asserts a claim pursuant to the laws of the United States by alleging that Defendants violated the Truth in Lending Act, 15 U.S.C. §§ 1631–32, -40. Thus, Defendants have a right to remove that claim to this court for adjudication. 28 U.S.C. §§ 1441(a), 1331. But because Plaintiff's claims for negligence, violation of the South Carolina Unfair Trade Practices Act, and violation of the South Carolina Manufacturers, Distributors, and Dealers Act substantially predominate over the Truth in Lending claim, over which the court has original jurisdiction, the court declines to exercise supplemental jurisdiction over those state law claims. 28

4

U.S.C. § 1367(c)(2). The Truth in Lending Act ("TILA") requires "creditors" to disclose certain information about the terms of the loan to the prospective borrower, *see, e.g.*, 15 U.S.C. §§ 1631–32; 15 U.S.C. § 1638; 12 C.F.R. § 226.17, and "[o]nly 'creditors' are liable under TILA and Reg[ulation] Z." *Mincey v. World Sav. Bank*, FSB, No. 2:07-3762-PMD, 614 F. Supp. 2d 610, 2008 U.S. Dist. LEXIS 73898, at *38 (D.S.C. Aug. 15, 2008); *Moore v. Flagstar Bank*, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (citations omitted). It is unclear to the court whether any of the named Defendants constitute a "creditor," as that term is used in TILA, *see* 15 U.S.C. § 1602(f), 12 C.F.R. § 226.2(a)(17), and if Plaintiff were to fail to state a claim pursuant to the Truth in Lending Act, the court does not want to be left with a suit more appropriate for adjudication in state court.

## CONCLUSION

Therefore, based on the foregoing, the court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion to remand. The court retains jurisdiction over Plaintiff's Truth in Lending claim, but remands Plaintiff's claims for negligence, for violation of the South Carolina Unfair Trade Practices Act, and for violation of the South Carolina Manufacturers, Distributors, and Dealers Act to state court.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**April 19, 2010**
**Charleston, SC**

5